May SPACH, as Receiver for Ro-Ben, Inc., a Florida bankrupt corporation, Appellant,

v.

MONARCH INSURANCE COMPANY OF OHIO, Appellee.

MONARCH INSURANCE COMPANY OF OHIO, Appellant,

v.

May SPACH, as Receiver for Ro-Ben, Inc., a Florida bankrupt corporation, Appellee.

No. 19111.

United States Court of Appeals
Fifth Circuit.

Nov. 14, 1962.

Anthony Reinert, Wicker, Smith, Blomqvist, Hinckley & Davant, Anthony Reinert, Miami, Fla., for appellant.

George J. Baya, Miami, Fla., for appellee.

Before JONES, WISDOM and GEWIN, Circuit Judges.

JONES, Circuit Judge.

Ro-Ben, Inc. brought an action in the Circuit Court of Dade County, Florida, against Monarch Insurance Company of Ohio to recover for loss and damage by fire to a stock of merchandise in a lingerie and trousseau shop in the Eden Roc Hotel in Miami Beach, Florida, which Monarch had insured. The cause was removed to the United States District Court for the Southern District of Florida. Ro-Ben was adjudicated a bankrupt and May Spach, as its Receiver, became a substituted plaintiff. A judgment for the plaintiff was entered which, on appeal, was reversed and remanded. Monarch Insurance Company v. Spach, Receiver, 5 Cir., 1960, 281 F.2d 401. A new trial was had at Miami, Florida. A verdict was returned for Spach in the amount of $15,000. A judgment was entered on the verdict. Thereafter the court entered a judgment against Monarch for attorneys' fees in the amount of $5,000. Spach has appealed on the ground that the verdict is against the undisputed evidence and that it was the result of passion, prejudice and bias caused by the court's refusal to strike certain of Monarch's defenses and by remarks made by Monarch's counsel and witnesses. Monarch has appealed from the judgment for attorneys' fees.

We do not think the cause of jurisprudence would, in any measure, be advanced by a recital of the evidence by which the parties attempted to show the value of the stock of merchandise destroyed or damaged by the fire. Efforts were made to reconstruct an inventory to determine prices and values. The appellant Spach insists that there is undisputed proof that the loss was more than double the amount of the jury award. Although it does not take a cross-appeal challenging the amount of the jury verdict and the judgment thereon, Monarch counters with the contention that Spach as plaintiff failed to establish the value of the goods damaged or destroyed and should be entitled to nominal damages only. In the review of a jury verdict the inquiry of a reviewing court is whether the jury finding could, with reason, be made upon the evidence before it. American Casualty Co. v. Myrick, 5th Cir. 1962, 304 F.2d 179, Patterson v. Belcher, 5th Cir. 1962, 302 F.2d 289. The evidence in the record before us justifies the inferences of the amount of the fire loss sustained and the district court did not err in refusing to set the verdict aside and grant a new trial.

In the cross-examination of Roger N. Saleeby, the President of the bankrupt corporation, counsel for Monarch was making inquiry regarding a business trip. The witness had stated that "We went to Long Island and to Boston," and to other places. Then the following transpired:

"[By Mr. Baya, attorney for Monarch]

"Q. Who is 'We'?

"A. A fellow and myself.

"Q. What fellow are you talking about?

"A. A fellow by the name of George.

"Q. What is George's last name? It is not Adjmi, is it?

"A. No.

"Mr. Wicker: [Attorney for Spach]: Your Honor, I am going to object to this.

"The Court: Mr. Baya, I do not want any more of that.

"The Witness: What has that got to do with me?

"By Mr. Baya: Q. Tell us his last name.

"Mr. Wicker: Wait a minute.

"The Court: Do you want to object?

"Mr. Wicker: I object, Your Honor.

"The Court: Sustained.

"By Mr. Baya: Q. Did you make any sales on that trip?

"Mr. Wicker: Wait just a minute. Your Honor, may I ask that you instruct the jury to disregard any inference that Mr. Baya is trying to get over to this jury.

"Mr. Baya: I resent your remarks, young man.

"The Court: Disregard any association with Adjmi.

"By Mr. Baya: Q. Did you make any sales on that trip?

"A. A few sales.

"Q. Were they for cash or for credit?

"A. Cash.

"Q. Did you record it in these books?

"A. Of course.

"Q. Will you please show me?

"The Court: Let's don't go into that. What has that got to do with the fire loss?

"Mr. Baya: It has nothing to do with it other than to attack his credibility, that's all.

"The Court: You can attack that by other evidence. He has testified he made the trip."

It seems that a person by the name of Adjmi had received considerable publicity in the Miami area in connection with a criminal charge against him.

At a pre-trial conference the court had ruled that no evidence would be received that Roger N. Saleeby had refused, at the request of investigators of the cause of the fire, to take a lie detector test. During the trial Monarch called these investigators as witnesses. One of these was George Zoller, a detective in the Miami Beach Police Department. After he had identified himself, the examination proceeded:

"The Court: Did you have anything to do with investigating the fire of April 7th at the Eden Roc Hotel?

"The Witness: Yes I did, Your Honor.

"The Court: Proceed.

"The Witness: I received a call to go with Captain Fitzpatrick to investigate a fire. When I arrived there the place was fairly well burned out, and probing around in the back room we saw an ironing board, where an ironing board had been, and under the ironing board there were three cans.

"When we picked up these three cans, I smelled either lacquer thinner or some other chemical like that that was highly combustible.

"The linen in the inside of the store had been hit by fire and just

scorched and the fire went out as though something had been dumped on it, and it burned itself out and it just burned the top layer of it.

"After a while the owner came in —I forgot what his name is now— but I asked him about the fire, and I told him that I thought it was set, that someone had set the fire.

"He told me that he didn't think so because he had previously been there and everything was all right.

"I told him again that I thought the fire had been set and I asked him if he would be willing to take a lie detector—

"Mr. Wicker: Wait a minute.

"Mr. Baya: Excuse me, You cannot say that, I am sorry, I am sorry, Judge. I didn't have a chance to talk to him about it. Just eliminate that reference if you will, Mr. Zoller, and go ahead.

"Excuse me, Judge. I haven't talked to him and told him what not to say.

"(Thereupon Mr. Baya talked to the witness out of the hearing of the jury.)

"Mr. Baya: I am sorry. Go ahead."

Monarch called to the witness stand Frank Fitzpatrick, a Captain on the Miami Beach Fire Department. As to his testimony the record shows:

"Mr. Baya: What did you ask him [Saleeby] and what did he say, to the best of your recollection?

"Mr. Fitzpatrick: Well, we asked him first if he had any knowledge of the fire and he said no. We asked him what time he went home the evening of the fire and we asked him what his activities were the day of the fire, and asked him, I believe, if he would submit to a lie detector test—

"Mr. Baya: No.

"The Court: Now, Mr. Baya, I have told you three times not to bring witnesses in on that. That's manifestly unfair.

"Mr. Baya: I understand it is, yes, your Honor. I am sorry, Judge.

"The Court: Now, lady and gentlemen of the jury, that is unlawful, illegal and improper.

"Mr. Baya: And I so agree, your Honor.

"The Court: And Mr. Baya is not at fault, but I think he was careless in not telling this man who ought to know better not to say that.

"Mr. Baya: Make no further reference to that.

"The Court: He has no authority.

"Mr. Baya: It has no bearing on this case at all, Captain.

"Mr. Wicker: Your Honor, I think since your Honor's ruling has been violated, I am not going to take the action your Honor indicated that I could, but I do think that it should be indicated to the jury, since—

"The Court: Now, wait a minute. Let's excuse the jury. Let's take this up at noon. We have had too many arguments around here about these things and occasionally something like this will happen. It is very unfortunate, but that is a matter for our determination later on as to what, if anything, further we can do about it."

We are not informed as to what transpired at noon or otherwise happened on this phase of the case until the court denied the motion of Spach for a new trial.

A. N. Willis, a Deputy Fire Marshal of the State of Florida, was called by Monarch. After stating in some detail his activities in investigating the fire, he was asked about his questioning of Saleeby. In concluding that inquiry there were these questions and answers:

"Mr. Baya: Was that all the conversation you had with him that you can recall during your investigation?

"A. We talked to him about his insurance and talked to him—

"Q. You understand what I admonished you about?

"A. Yes."

The reference by Monarch's counsel to Adjmi was inexcusable but it does not necessarily follow that it constitutes reversible error. The court instructed the jury to disregard any association with Adjmi. The court instructed the jury to disregard the reference in the testimony of the witness Zoller to the refusal of Saleeby to take a lie detector test. So also was a direction to disregard given with respect to the testimony of Fitzpatrick. No objection was made or exception taken to the testimony of the witness Willis which Spach now says was prejudicial.

■■ The general rule is that, unless the conduct of counsel or witnesses is such as to impair gravely the calm and dispassionate consideration of the case by the jury, no error flows from the refusal of the trial court, in the exercise of its discretion, to vitiate the trial. 88 C.J.S. Trial § 52, p. 139. Cunningham v. Olson Drilling Co., 5th Cir. 1948, 171 F.2d 392; Pasotex Pipe Line Co. v. Murray, 5th Cir. 1948, 168 F.2d 661; Wirt v. Fraser, 158 Fla. 777, 30 So.2d 174. We do not think that any prejudice resulted to Spach. We conclude that the trial court did not abuse its discretion in refusing to grant a new trial because of the conduct of Monarch's counsel and its witnesses.

■ Monarch has challenged the validity of the judgment against it upon the ground that the Florida statute which provides that attorneys' fees shall be determined by the trial judge is unconstitutional. At the time the policy was issued and at the time of the first trial the amount to be awarded to a successful litigant as a reasonable attorney's fee was determined by the jury in common law actions. Fla.Stat.Ann. § 625.08. Before the second trial the statute had been repealed and in its place the legislature had enacted another providing for the fixing of the amount by the judge. Fla. Stat.Ann. § 627.0127. The contention is made that the first statute was a part of the contract and the change was an unconstitutional impairment. It is also asserted that the new act deprives the insurer of a right under the Seventh Amendment to a trial by jury in a common law action. Both of these claims are expressly resolved against Monarch in the decision by this Court in Empire State Insurance Company v. Chafetz, 5th Cir. 1962, 302 F.2d 828. We need not here repeat that which was so recently and so well said. There is no merit in the position taken by Monarch.

The judgments of the district court are

Affirmed.